**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KIMBERLY NEVAS-HACKMEISTER, Plaintiff, | : | |
| v. | : | 3:24-CV-1853 (SFR) |
| CONNECTICUT MILITARY DEPARTMENT, TIMOTHY TOMCHO, CATRIANA HERSEY, JAELLE HERSEY, SHELDON HERNANDEZ, VICTORIA HASKINS, NANCY HASKINS, and STEPHEN HASKINS, Defendants. | : | |

**MEMORANDUM & ORDER**

Plaintiff Kimberly Nevas-Hackmeister asserts claims against the Connecticut Military Department ("CTMD"), as well as the following individuals affiliated with CTMD: Timothy Tomcho, Catriana Hersey, Jaelle Hersey, Sheldon Hernandez, and Victoria Haskins (together, "CTMD Defendants"). Nevas-Hackmeister also sues two individuals who are related to Victoria Haskins: Nancy Haskins and Stephen Haskins ("Private Defendants"). CTMD Defendants and Private Defendants have moved to dismiss the Second Amended Complaint ("SAC"). During the pendency of the motions to dismiss, Nevas-Hackmeister also moved to amend the complaint to assert additional claims. For the reasons stated below, Defendants' motions to dismiss (ECF Nos. 49 & 59) are granted and Nevas-Hackmeister's motion to amend (ECF No. 102) is denied. I will nonetheless give Nevas-Hackmeister one final opportunity to amend the complaint to attempt to state viable claims.

# I. BACKGROUND

## A. Factual Background

I accept as true the following facts pleaded in the Second Amended Complaint filed February 6, 2026. ECF No. 30 ("SAC").[1]

### 1. Nevas-Hackmeister's Employment Status

Kimberly Nevas-Hackmeister is an accomplished equestrian who joined the First Company Governor's Horse Guard (1GHG) in 2018. SAC ¶ 1. 1GHG is an element of the organized militia of the state of Connecticut that is under the command and control of CTMD. *Id.* ¶ 3. Nevas-Hackmeister "served with and without remuneration for more than four years as a member of 1GHG." *Id.* at 8.[2] The SAC states that Nevas-Hackmeister received a W-2 each year reflecting payments received for active duty service, and that these W-2 forms reflect withholdings for Social Security and Medicare. *Id.* The SAC contends that Nevas-Hackmeister satisfied the definition of "state employee" under Conn. Gen. Stat. § 4-141(5)(A) at all times relevant to the case. *Id.*

[1] Exhibit A of the SAC is a spreadsheet depicting a timeline of "retaliation / witness tampering activity" between October 22, 2021 and April 6, 2023. ECF No. 30-1. Because the SAC does not explain how its allegations are clarified or amplified by the 38-page spreadsheet, and in any event the spreadsheet does not conform to Rule 8's requirement that a pleading contain "a short and plain statement of the claim," I do not consider this exhibit in resolving the present motions. *See, e.g.*, *Walker v. Pastoressa*, No. 22CV00997HGLGD, 2022 WL 3716742, at *5 (E.D.N.Y. Aug. 29, 2022) ("While Plaintiff may include exhibits in support of his claims, he cannot rely on exhibits to fulfill his obligation to provide a short and plain statement of his claims that complies with Rule 8.").

[2] I cite throughout to the pagination generated by ECF rather than to any page numbers appearing within the parties' submissions.

### 2. Sheldon Hernandez Applies to 1GHG

Nevas-Hackmeister was appointed in March 2021 to serve as Interim Adjutant of 1GHG. *Id.* ¶ 6. This position required Nevas-Hackmeister to "process and verify applications for enlistment in 1GHG." *Id.*

Defendant Sheldon Hernandez applied to enlist in 1GHG in January 2021. *Id.* ¶ 4. On April 1, 2021, Nevas-Hackmeister recommended that Hernandez not be accepted. *Id.* ¶ 10. The SAC contends that Hernandez became confrontational and blamed Nevas-Hackmeister for this decision. *See id.* ¶¶ 12-22. After Hernandez was given the opportunity to supplement her application, *see id.* ¶ 18, and because of the stressful encounters with Hernandez, Nevas-Hackmeister "voluntarily relinquished her role as Interim Adjutant," *id.* ¶ 23.

In August 2021, Hernandez failed to pass 1GHG's end-of-training qualification test of cavalry protocol and horse-riding safety. *Id.* ¶ 25. Hernandez again failed the test in December 2021. *Id.* ¶ 45. CTMD's then-commandant Major Ravenberg issued an order honorably discharging Hernandez on December 16, 2021. *Id.* ¶ 46.

### 3. Nevas-Hackmeister Purchases 1GHG Horses

On June 15, 2021, Nevas-Hackmeister learned that she had placed the winning bid to purchase two retired horses from the 1GHG herd. *Id.* ¶¶ 29-30. The two horses were delivered to Nevas-Hackmeister's barn in August 2021. *Id.* ¶ 29.

Defendant Catriana Hersey served at the time as 1GHG's Unit Horse Officer. *Id.* ¶ 30. In October 2021, Catriana Hersey alleged irregularities in the sale of the two horses. *Id.* ¶ 31. Catriana Hersey told Nevas-Hackmeister that she had complained to CTMD Judge Advocate General (JAG) Timothy Tomcho about Major Ravenberg's decision to permit Nevas-Hackmeister to acquire the two horses. *Id.* ¶ 32.

On December 20, 2021, Defendant Victoria Haskins told Nevas-Hackmeister that Haskins had obtained documents showing that Nevas-Hackmeister obtained the horses improperly. *Id.* ¶ 49. Haskins demanded that Nevas-Hackmeister pay her money to avoid CTMD bringing a legal action against Nevas-Hackmeister related to the horses. *Id.* ¶ 50.

**4. Efforts to Remove Major Ravenberg**

In the same conversation where Catriana Hersey told Nevas-Hackmeister that Tomcho was investigating Nevas-Hackmeister's purchase of two horses, Catriana Hersey also told Nevas-Hackmeister that "Tomcho would not hesitate to 'clean house' by getting rid of the Ravenbergs and other 1GHG officers, and that [Hersey] would then be in charge of the unit." *Id.* ¶ 35. Hersey demanded that Nevas-Hackmeister resign and insinuated that everything that Nevas-Hackmeister said or did at 1GHG was being monitored. *Id.* ¶¶ 38-40.

In December 2021, Victoria Haskins told Nevas-Hackmeister that Hernandez was considering suing Major Ravenberg and 1GHG for discrimination. *Id.* ¶ 48. Hernandez sent a letter to CTMD's EEOC officer on January 28, 2022 stating she intended to "file a formal complaint" of retaliation and harassment. *Id.* ¶ 53. Hernandez submitted additional details in support of her claim on March 29, 2022. *Id.* ¶ 112. Hernandez alleged that Nevas-Hackmeister was "ordered" to treat Hernandez poorly during the recruitment process. *Id.*

Defendant Jaelle Hersey visited Nevas-Hackmeister at her home on March 8, 2022. *Id.* ¶ 66. The SAC asserts that Hersey repeatedly encouraged Nevas-Hackmeister to join in and support a continuing effort to remove Major Ravenberg and other Ravenberg family members in 1GHG. *Id.* ¶¶ 67-84. According to the SAC, these efforts were directed by a "CTMD JAG contact," who wanted to remove Major Ravenberg—an armed forces veteran—from his leadership role because the JAG contact believed it was "better optics to have young women

and minorities as the face of the unit." *Id.* ¶ 85 (quotation marks omitted). The SAC quotes Hersey as describing these efforts as a "coup" or "mutiny." *Id.* ¶ 86. After Nevas-Hackmeister pressed Hersey to disclose the identity of the "JAG contact," Hersey identified Tomcho as the JAG contact. *Id.* ¶¶ 97-99.

**5. Defendants Visit Nevas-Hackmeister's Home**

Nevas-Hackmeister began a leave of absence in November 2021 ahead of the birth of her son. *Id.* ¶ 44. Nevas-Hackmeister remained on leave until July 2022. *Id.* ¶ 120.

In the weeks after Nevas-Hackmeister gave birth, Victoria Haskins visited Nevas-Hackmeister at her home twice in early March 2022. *Id.* ¶¶ 61, 63-64. During these visits, the SAC contends that Haskins threatened that Nevas-Hackmeister would be prosecuted by CTMD for improperly acquiring two horses from 1GHG, encouraged Nevas-Hackmeister to spend more time with Haskins and Hernandez, and urged Nevas-Hackmeister to file her own claim of pregnancy discrimination against CTMD in order to support Hernandez's false claim of discrimination. *Id.* ¶¶ 63-65.

The SAC describes a series of dramatic—indeed bizarre—events that subsequently occurred at Nevas-Hackmeister's home. Victoria Haskins and Nancy Haskins (Victoria's mother) visited Nevas-Hackmeister on March 11, 2022, and again on March 15, 2022. *Id.* ¶¶ 100-02. The SAC says that Nevas-Hackmeister's husband's dog died soon after the March 15 visit. *Id.* ¶ 102. Later that month, Victoria Haskins threatened that CTMD would use deadly force to seize the horses from Nevas-Hackmeister. *Id.* ¶ 110. And in May 2022, after Victoria Haskins and Nancy Haskins returned for another visit to Nevas-Hackmeister's home, another of Nevas-Hackmeister's pets died within a day of eating a treat given to it by Nancy Haskins. *Id.* ¶ 123.

On June 6, 2022, Nevas-Hackmeister told Victoria Haskins that she recently found a document relevant to Hernandez's discrimination complaint. *Id.* ¶ 128. Nevas-Hackmeister said that she discovered Hernandez's original application to join 1GHG in a box in a car she "hadn't driven in a long time." *Id.* The SAC notes that this application severely undermined Hernandez's claim of mistreatment because it confirmed that Hernandez never submitted a complete application to join 1GHG. *Id.* ¶ 96.

Victoria Haskins, Nancy Haskins, and Stephen Haskins (Victoria's brother) arrived unannounced at Nevas-Hackmeister's home on June 9, 2022. *Id.* ¶ 129. During this visit, Stephen Haskins—whom the SAC says was covering his face with a mask—attempted to search Nevas-Hackmeister's barn, threw household goods at Nevas-Hackmeister, and then entered Nevas-Hackmeister's home and told Nevas-Hackmeister that she and her family were being "kidnapped." *Id.* ¶¶ 129-30. The SAC recounts a lengthy sequence during which Stephen Haskins attempted "various hypnosis techniques," Tomcho—whom Victoria Haskins had called on her phone—informed Nevas-Hackmeister that she and her family would be killed if they attempted to flee the premises, *id.* ¶ 135, and Victoria Haskins acknowledged poisoning Nevas-Hackmeister's pets in an effort to create a "state of terror" in the home, *id.* ¶ 138. The SAC posits that the purpose of this "home invasion" was to destroy any evidence in Nevas-Hackmeister's possession that would undermine Hernandez's discrimination claim against Major Ravenberg and cause psychological torment such that Nevas-Hackmeister could never pursue legal action against any of the Defendants named in this action. *Id.* ¶ 154. Nevas-Hackmeister and her family chose not to report these events to the Connecticut State Police because they believed the State Police would be unable or unwilling to investigate the events. *Id.* ¶ 162.

### 6. Nevas-Hackmeister Is Discharged

Major Ravenberg was suspended from 1GHG on June 23, 2022. *Id.* ¶ 163. Major Ravenberg's wife, who was also in a leadership role at 1GHG, was also suspended. *Id.* The SAC does not describe why the Ravenbergs were suspended. Nevas-Hackmeister reacted by writing to Victoria Haskins on July 11, 2022. *Id.* ¶ 165. Over text, Nevas-Hackmeister "urged Victoria Haskins to come forward, tell the truth, and 'set right' her statements and what she knew about Hernandez's false claims of racial discrimination." *Id.* The SAC describes this text message to Victoria Haskins as "constitutionally-protected." *Id.* On July 18, 2022, Nevas-Hackmeister learned that Victoria Haskins had accused her of engaging in "discrimination (retaliation) and harassment." *Id.* ¶ 169.

Nevas-Hackmeister returned from her leave of absence on July 21, 2022. *Id.* ¶ 170. Catriana Hersey told Nevas-Hackmeister that "she did not think [Nevas-Hackmeister] would be able to fulfill her duties and obligations because she has two children." *Id*. Hersey demanded Nevas-Hackmeister produce a "written narrative from a physician about her reproductive and overall health" before she could return to duty. *Id.* On August 18, 2022, Nevas-Hackmeister was told not to enter 1GHG property "until she had undergone the examination Hersey demanded." *Id.*

On August 25, 2022, Nevas-Hackmeister sent an email to Catriana Hersey demanding that Hersey explain why she was requiring medical clearance from Nevas-Hackmeister. *Id.* ¶ 171.

On September 1, 2022, Nevas-Hackmeister attended a 1GHG drill. *Id.* ¶ 173. During the drill, Nevas-Hackmeister spoke with Commandant Zaczynski, who had recently been appointed to replace Major Ravenberg. *Id.* Zaczynski ordered Nevas-Hackmeister to leave the

property while acknowledging it was strange that Catriana Hersey demanded Nevas-Hackmeister to produce medical clearance. *Id.*

On September 6, 2022, Zaczynski emailed Tomcho to request permission to discharge Nevas-Hackmeister. *Id.* ¶ 175. The stated justification was a violent or threatening Facebook post made by Nevas-Hackmeister. *Id.*

Nevas-Hackmeister attended another 1GHG drill on September 8, 2022. *Id.* ¶ 176. Nevas-Hackmeister was informed that she was being investigated for the acquisition of the two retired horses in 2021. *Id.* A CTMD investigative report dated October 24, 2022 failed to identify any wrongdoing by Nevas-Hackmeister. *Id.* ¶ 177. After investigating Victoria Haskins's complaint of discrimination and retaliation by Nevas-Hackmeister, CTMD failed to identify any evidence of discrimination. *Id.* ¶ 179. Rather, Nevas-Hackmeister was "counseled" for being impolite to Haskins. *Id.*

Nevas-Hackmeister served CTMD with a CHRO complaint on December 22, 2022. *Id.* ¶ 150.

Nevas-Hackmeister was summoned to meet with Commandant Zaczynski on January 5, 2023. *Id.* ¶ 180. Nevas-Hackmeister learned during this meeting that she was being discharged. *See id.* Zaczynski issued two formal reprimands, which contended that Nevas-Hackmeister (1) engaged in discourtesy by sending the July 11 text message to Hersey challenging Hersey's demand for medical documentation, and (2) engaged in misconduct and excessive absenteeism by posting derogatory statements on the 1GHG Facebook page and attending less than half of required events in the fourth quarter of 2022. *Id.* According to the SAC, Zaczynski told Nevas-Hackmeister she was being reprimanded because she had "posted a message [on Facebook] alleging that I was dismissing you" when in reality Nevas-

Hackmeister had sent a "private email" to Zaczynski asking if it was true that he intended to dismiss her. *Id.*

On January 10, 2023, these reprimands were revised to reflect only "poor attendance" as the stated justifications for Nevas-Hackmeister's discharge. *Id.* ¶ 181.

The SAC alleges that Nevas-Hackmeister's horses died under suspicious circumstances on January 28, 2023 and April 6, 2023. *Id.* ¶¶ 150-51. In particular, the SAC states that, in the days leading up to each horse's death, Nevas-Hackmeister observed "multiple uninvited individuals trespass on her property, approach the horse paddock fence, and throw unidentified items into the paddock." *Id.* ¶ 153.

**B. Procedural History**

After the action was litigated before the Connecticut Commission for Human Rights and Opportunities (CHRO) and in Connecticut Superior Court, Defendants removed to this Court on November 25, 2024. ECF No. 1.[3] Following a remote conference with counsel, I issued a scheduling order. ECF No. 38.

The operative pleading is the Second Amended Complaint ("SAC") filed February 6, 2025. ECF No. 30 ("SAC"). CTMD Defendants timely moved to dismiss the SAC on April 7, 2025. ECF No. 49; ECF No. 49-1 ("CTMD Defs.' Mem.").[4] Private Defendants Nancy Haskins and Stephen Haskins timely moved to dismiss the SAC on May 7, 2025. ECF No. 59

[3] The case was originally assigned to District Judge Omar A. Williams. The case was transferred to me on January 6, 2025. ECF No. 20.

[4] CTMD Defendants earlier filed two motions to dismiss, ECF Nos. 47 & 48, which were superseded by the motion to dismiss discussed throughout this decision. *See* ECF No. 81.

("Private Defs.' Mem."). Over Nevas-Hackmeister's opposition, I granted CTMD Defendants' motion to stay discovery pending resolution of the motions to dismiss. ECF No. 80.

Nevas-Hackmeister responded in opposition to CTMD Defendants' motion on July 10, 2025. ECF No. 68 ("Pl.'s Mem. re CTMD Defs."). Nevas-Hackmeister responded separately to Private Defendants' motion. ECF No. 69 ("Pl.'s Mem. re Private Defs."). CTMD Defendants replied in support of their motion. ECF No. 77 ("CTMD Defs.' Reply"). In conjunction with responding to these motions to dismiss, Nevas-Hackmeister moved to remand the action on May 20, 2025. ECF No. 60. I denied the motion to remand because I concluded that I had federal-question subject-matter jurisdiction over this removed action. ECF No. 85. But I scheduled a status conference to explore whether Nevas-Hackmeister wished to move to amend the complaint to disclaim any federal causes of action. *Id.*

Shortly before the conference, Nevas-Hackmeister moved to amend the complaint. ECF No. 89. After confirming on the record that (1) Nevas-Hackmeister still sought to pursue federal claims and (2) Defendants opposed granting leave to amend, I denied the motion without prejudice because Nevas-Hackmeister failed to include a memorandum of law in support of her motion describing "why she has good cause to amend the pleadings pursuant to Fed. R. Civ. P. 16(b)(2)." ECF No. 92. And, because the proposed amended complaint totaled more than 200 pages and contained 27 counts, *see* ECF No. 90, I warned Nevas-Hackmeister that I would "strictly enforce" Rule 8's requirement that any future proposed amended complaint include a "short and plain statement" explaining why Nevas-Hackmeister was entitled to relief. ECF No. 92.

Nevas-Hackmeister renewed her motion to amend on February 9, 2026. ECF No. 102; ECF No. 102-1 ("Pl.'s Mem. re Mot. to Amend"). Nevas-Hackmeister included the proposed

Third Amended Complaint ("Proposed TAC") as an attachment to her motion. ECF No. 102-2. The Proposed TAC contains 126 paragraphs and asserts 18 counts, many of which are pleaded in the alternative. Defendants responded in opposition. ECF No. 114 ("Defs.' Mem. re Mot. to Amend").[5] Nevas-Hackmeister replied in support of her motion on May 22, 2026. ECF No. 122 ("Pl.'s Reply re Mot. to Amend").

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A district court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (citation modified). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint." *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025) (citation modified).[6]

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this "plausibility" requirement is "not

---

[5] Nancy Haskins and Stephen Haskins filed separate notices that they join completely in the CTMD Defendants' opposition to Nevas-Hackmeister's motion to amend. ECF Nos. 118 & 119.

[6] There may be some tension in prior decisions from the Second Circuit analyzing when it is appropriate to draw inferences in favor of the pleader on a Rule 12(b)(1) motion to dismiss. *See Agyapomaa v. Mayorkas*, 680 F. Supp. 3d 141, 147 n.2 (D. Conn. 2023) (collecting cases). In this ruling, I accept as true the allegations in the Second Amended Complaint and draw all reasonable inferences in favor of Nevas-Hackmeister. *See id.*

akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III. DISCUSSION[7]

### A. Federal-Question Jurisdiction

Although signed by counsel, the SAC fails to include "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). But as I explained in denying Nevas-Hackmeister's earlier motion to remand, *see* ECF No. 85, the SAC adequately invokes this court's jurisdiction to resolve "civil actions arising under the Constitution, laws, or treaties of the United States" by alleging in Count One that Defendants violated the First Amendment of the United States Constitution. 28 U.S.C. § 1331. I understand the SAC to invoke

[7] After CTMD Defendants argued that Nevas-Hackmeister failed to timely effect service on CTMD Defendants in their official capacities, *see* CTMD Defs.' Mem. 15-17, Nevas-Hackmeister served Victoria Haskins, Sheldon Hernandez, Catriana Hersey, Jaelle Hersey, and Timothy Tomcho in their official capacities on April 23, 2025. ECF No. 58. Although service was not effected within the 90-day deadline set by Fed. R. Civ. P. 4(m) and Nevas-Hackmeister failed to move for an extension of this mandatory deadline, I will exercise my discretion to excuse Nevas-Hackmeister's untimely service to resolve on the merits whether Nevas-Hackmeister can recover from any of these defendants because it is clear these defendants—having been served in their individual capacities—were on notice that Nevas-Hackmeister also asserted claims against them in their official capacities. *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("District courts have discretion to grant extensions even in the absence of good cause.") (citation modified).

supplemental jurisdiction over the state-law claims pleaded in Counts Two through Eleven. *Id.* § 1367.[8]

### B. *Feres* Doctrine

Before analyzing the sufficiency of Count One, I begin by taking up Defendants' threshold argument that the SAC must be dismissed in its entirety for lack of subject-matter jurisdiction pursuant to the doctrine of intra-military immunity recognized by the Supreme Court in *Feres v. United States*, 340 U.S. 135 (1950). *See* CTMD Defs.' Mem. 25-28. *See Overton v. New York State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 93 (2d Cir. 2004) (recognizing that the *Feres* doctrine implicates subject-matter jurisdiction); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) ("Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits.") (citation modified).

In *Feres*, the Supreme Court held that the Federal Tort Claims Act (FTCA) did not waive the federal government's sovereign immunity "where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1953). Although *Feres* arose in the context of suits against the United States under the FTCA, the doctrine has also been applied to preclude Title VII claims brought by civilian employees of the military who seek redress where the suit "(1) challenges conduct integrally related to the military's unique structure, . . . or (2) is not purely civilian." *Overton*, 373 F.3d at 95 (citation modified). The Second Circuit has similarly held that *Feres* precludes National Guard members from suing state officials under 42 U.S.C. § 1983 for "injuries arising incident to

[8] Nevas-Hackmeister and all of the individual defendants would appear to be Connecticut citizens, making it highly unlikely that the requirements for diversity jurisdiction can be satisfied here. *See* 28 U.S.C. § 1332.

service in the Guard." *Jones v. New York State Div. of Mil. & Naval Affs.*, 166 F.3d 45, 52 (2d Cir. 1999).[9]

In their opening brief, CTMD Defendants argue that the "*Feres* Doctrine bars the Plaintiff's claims alleging violations of CFEPA and Title VII." CTMD Defs.' Mem. 28. But none of the counts set forth within the SAC alleges that Defendants violated Title VII. *See* SAC 51-59. Count One does, however, allege that Defendants violated the Connecticut Fair Employment Practices Act ("CFEPA"). *Id.* at 51. Although the theory of liability is not obvious, I construe Count One to allege that Defendants abridged Conn. Gen. Stat. § 46a-60(b)(9)—CFEPA's pregnancy discrimination provision—by instructing Nevas-Hackmeister to submit medical documentation concerning the "function of the individual's reproductive system" before permitting her to attend drills. SAC ¶ 170.[10] Nevas-Hackmeister's opposition brief does not respond to Defendants' argument that *Feres* precludes recovery under CFEPA for this injury. *See* Pl.'s Mem. re CTMD Defs. 14-18. I nonetheless decline to apply *Feres* to bar the CFEPA claim for two reasons. First, the only claim discussed by CTMD Defendants in their briefing that also appears within the SAC is the CFEPA claim (Count One), and Defendants have not identified any reason why *Feres*—which arose in the context of suits under federal law against the federal government related to federal military service—prevents a state from regulating the conduct of its own regulated militia. Second, although courts have held that *Feres* precludes Title VII claims by dual-status members of the National Guard in

[9] Scholars and jurists have criticized *Feres* and its progeny. *See, e.g.*, *Taber v. Maine*, 67 F.3d 1029, 1037, 1039 (2d Cir. 1995) (Calabresi, J.) (criticizing the way that the *Feres* doctrine "quickly lurched toward incoherence").

[10] It appears that CTMD Defendants share this understanding of the pregnancy discrimination claim. CTMD Defs.' Mem. 38.

certain circumstances, *see Overton*, 373 F.3d at 92, it does not seem that Nevas-Hackmeister was ever a member of the Connecticut National Guard, and there appear to be important distinctions between serving in the 1GHG and the Connecticut National Guard. *Cf.* SAC ¶ 2 (distinguishing the responsibilities of 1GHG from the functions of the Connecticut National Guard); Conn. Gen. Stat. § 27-8 (describing the Governor's Guards).[11]

Absent any meaningful adversary presentation on how *Feres* impacts the specific claims pleaded here—and because I conclude that the SAC should be dismissed for independent reasons—I decline on the present record to dismiss the SAC for lack of subject-matter jurisdiction.[12]

### C. Count One

Count One is captioned "Unlawful Retaliation and Witness Intimidation Against Plaintiff for her Refusal to Remain Silent about False Statements Made in an Official Investigation and Refusal to Initiate a False Complaint to an Official Body, All in Violation of

---

[11] CTMD Defendants cite *Jones v. Crittenden*, 96 S.W.3d 13, 19 (Ky. 2002), where the Kentucky Supreme Court held that Congress had impliedly preempted state civil rights statutes with respect to members of the National Guard. CTMD Defs.' Mem. 28. But *Jones* analyzed the applicability of state civil rights statutes to members of the Kentucky National Guard rather than members of the Kentucky organized militia.

[12] CTMD Defendants suggest in reply that "[i]f the *Feres* doctrine applies to employees which have a dual military-civilian status, it must apply to state militia." CTMD Defs.' Reply 7. But Defendants do not explain why the *Feres* doctrine would prevent Connecticut from regulating the conduct of its own organized militia (1GHG) through the CFEPA. CTMD Defendants also raise arguments for the first time in their reply concerning the *Feres* doctrine's application to claims brought under 42 U.S.C. § 1985 and *Bivens*. *See id.* at 6-9. To the extent these arguments are raised for the first time in reply, I decline to consider them. *In re Harris*, 464 F.3d 263, 268 n.3 (2d Cir. 2006) (Sotomayor, J.) ("We generally do not consider issues raised in a reply brief for the first time . . . because if [a movant] raises a new argument in a reply brief [a non-moving party] may not have an adequate opportunity to respond to it.") (citation modified). I further note that none of the eleven counts within the SAC pleads a claim under *Bivens*, and although Count One references § 1985, as I discuss below, CTMD is protected by sovereign immunity against such a claim.

Public Policy." SAC 51-52. I understand Count One to allege that Defendants violated the First Amendment. [13]

"To establish a claim for First Amendment retaliation, [a plaintiff] must demonstrate that: (1) [her] speech or conduct was protected by the First Amendment; (2) [s]he suffered an adverse employment action; and (3) [there exists] a causal connection between the protected activity and adverse employment action." *Grande v. Hartford Bd. of Educ.*, 804 F. Supp. 3d 334, 348 (D. Conn. 2025) (citing *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015).

Speech by public employees is analyzed under the two-step test described in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563 (1968).[14] "The first [component] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. "If the first component is present, an employer must then show that it 'had an adequate justification for treating the employee differently [based on his or her speech] from any other member of the general public.'" *Montero v. City of Yonkers, New York*, 890 F.3d 386, 395 (2d Cir. 2018) (quoting *Garcetti*, 547 U.S. at 418).

---

[13] Count One also alleges that Defendants violated the pregnancy discrimination provision of CFEPA, Conn. Gen. Stat. § 46a-60(b)(9). But because I conclude the SAC fails to state a First Amendment claim and I lack original jurisdiction over the CFEPA claim, I decline to address on the current record whether Nevas-Hackmeister can state a claim under the CFEPA.

[14] CTMD Defendants argue that Nevas-Hackmeister was not a paid employee of CTMD. CTMD Defs.' Mem. 29-34. But as they properly acknowledge, *see id.* at 39, the Second Circuit has held that the *Pickering-Garcetti* framework for public employee retaliation claims also applies to volunteers. *See Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 557 (2d Cir. 2001). Thus, I need not determine Nevas-Hackmeister's employment status to resolve the First Amendment claim.

"In assessing the first prong of the retaliation test—whether a public employee's speech is protected—we must consider two separate subquestions: (1) whether the employee spoke as a citizen rather than solely as an employee, and (2) whether [s]he spoke on a matter of public concern." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82-83 (2d Cir. 2022) (citation modified). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "Courts may consider a speaker's motive as part of this analysis, although that factor is not dispositive." *Shara*, 46 F.4th at 84.

CTMD Defendants argue that the SAC fails to support the inference that Nevas-Hackmeister engaged in speech as a citizen on a matter of public concern. CTMD Defs.' Mem. 41-42. In their briefing, Defendants analyze Nevas-Hackmeister's Facebook posts concerning CTMD and emails to Zaczynski. CTMD Defs.' Mem. 37-38. Meanwhile, the factual background section of the SAC states that Nevas-Hackmeister's personal text message to Victoria Haskins about the Hernandez pregnancy discrimination complaint is "constitutionally protected." SAC ¶ 165. Yet Count One itself does not identify what communication forms the basis for the First Amendment claim, asserting only that Nevas-Hackmeister was reprimanded for "statements she made as a private citizen in violation of the First Amendment to the Constitution of the United States." *Id.* ¶ 51. Moreover, Nevas-Hackmeister does not articulate in her memorandum what communication forms the basis for her First Amendment claim. Indeed, Nevas-Hackmeister ignores entirely Defendants' arguments for dismissal of the First Amendment claim. *See* Pl.'s Mem. re: CTMD Defs. In doing so, Nevas-Hackmeister fails to provide an explanation for how any of her communications are protected speech under the *Pickering-Garcetti* framework.

The SAC fails to provide fair notice to Defendants of the facts that form the basis of the First Amendment retaliation claim. *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (stating that, to satisfy Rule 8, "the complaint must at a minimum disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.") (citation modified). Indeed, it remains unclear whether Defendants have responded in their briefs to the communications that Nevas-Hackmeister believes form the basis for her claim. Accordingly, I will dismiss Count One to the extent it alleges Defendants retaliated in violation of the First Amendment in light of the SAC's failure to provide adequate notice of the claim under Rule 8 as well as Nevas-Hackmeister's failure to defend the merits of any First Amendment retaliation claim and show how her communications can be described as speech by a citizen on a matter of public concern. *See, e.g.*, *Shara*, 46 F.4th at 85 ("Speech does not involve a matter of public concern when it principally focuses on the speaker's personal issues or . . . is calculated to redress personal grievances, even if it also incidentally touches on a matter of general importance.") (citation modified).

Given Nevas-Hackmeister's failure to defend her First Amendment claim in her opposition memorandum, I could simply deem any such claim abandoned and dismiss with prejudice. *Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("In the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.") (citation modified). However,

I will exercise my discretion to permit Nevas-Hackmeister one further opportunity to attempt to allege a First Amendment claim in the amended complaint.[15]

Count One also asserts that "Plaintiff possessed personal knowledge of defendant's unlawful and discriminatory conspiracy to purge military veterans by a variety of methods, without reasonable cause, from the ranks of 1GHG in violation of [Connecticut state law] and 42 U.S.C. § 1985." SAC 51. It is unclear from this statement whether Nevas-Hackmeister seeks to hold CTMD liable under § 1985. CTMD Defendants understand Nevas-Hackmeister to contend that CTMD violated § 1985 in its interactions with individuals other than Nevas-Hackmeister. Although the implication of this argument is not obvious from CTMD Defendants' briefing, it appears that CTMD Defendants contend that Nevas-Hackmeister cannot recover on the basis of alleged illegal conduct by CTMD against other people. *See* CTMD Defs.' Mem. 8.

Nevas-Hackmeister forfeited the opportunity to defend the merits of any § 1985 claim by failing to respond to these arguments in her opposition. In any event, CTMD—the only

---

[15] It is not clear, and Nevas-Hackmeister does not explain, how a private text message sent to a co-worker about another co-worker's discrimination claim implicates a matter of public concern.

CTMD Defendants identified additional substantive defects with Count One's retaliation claim. First, with respect to a First Amendment claim, Nevas-Hackmeister cannot recover against CTMD—a state agency—or any defendant sued in their official capacity because § 1983 does not authorize a plaintiff to recover damages from states or state officials sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68-71 (1989). Second, Count One fails to state a claim because it neglects to identify which defendants retaliated against Nevas-Hackmeister for her speech and how these defendants were personally involved in retaliating against Nevas-Hackmeister. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (citation modified). So for these additional reasons—neither of which Nevas-Hackmeister acknowledges or contests in her opposition brief—Count One's retaliation claim is dismissed.

defendant whose conduct is described in Count One—is immune from suit for a claim under § 1985 because it is an instrumentality of the state of Connecticut. *See, e.g.*, *Reynolds-El v. Strackbein*, No. CV 3:25-CV-00951 (TOF/KAD), 2025 WL 3470483, at *8 (D. Conn. Dec. 3, 2025) ("Congress did not abrogate the states' immunity from suit under 42 U.S.C. §§ 1981, 1983, 1985, and 1986."), *report and recommendation adopted* (D. Conn. Jan. 6, 2026); *Clark v. Connecticut*, No. 3:23-CV-1527 (SVN), 2024 WL 4349054, at *6 (D. Conn. Sept. 30, 2024) ("Congress has not unequivocally expressed an intent to abrogate Eleventh Amendment immunity under 42 U.S.C. §§ 1983, 1985, or 1986."). Although Nevas-Hackmeister briefly contends that CTMD waived its sovereign immunity by removing the action to this court, *see* Pl.'s Mem. re: CTMD Defs. 10-13, that argument is squarely foreclosed by precedent. *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015) ("Neither logic nor precedent supports the proposition that a state waives its general state sovereign immunity by removing an action from state court to federal court.") (citation modified). Thus, to the extent Count One purports to state a claim against CTMD under § 1985, that claim is dismissed without leave to amend as barred by sovereign immunity.[16]

In its introduction, the SAC recites "provisions and legal principles" it says were violated by Defendants, including various federal civil and criminal statutes. SAC 3-6. But

[16] Citing a Ninth Circuit decision from 1985, Nevas-Hackmeister suggests that the "doctrine of sovereign immunity only applies to federal agencies and federal employees who act *within their official capacities*." Pl.'s Mem. re CTMD Defs. 13 (emphasis in the original) (citing *S. Delta Water Agency v. U.S., Dep't of Interior, Bureau of Reclamation*, 767 F.2d 531, 536 (9th Cir. 1985). To the extent Nevas-Hackmeister intends to assert that sovereign immunity does not apply to CTMD, such an argument misreads *South Delta* and runs contrary to well settled law as set forth by the U.S. Supreme Court. *See, e.g.*, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (describing the Eleventh Amendment as reflecting a "presupposition . . . first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent") (citation modified).

Count One is the only claim in the SAC that makes reference to federal law. *See id.* at 51-52. "Generally, a passing reference to a federal statute is insufficient to state a plausible claim." *Cmty. Bank, N.A. v. JPMorgan Chase & Co.*, 761 F. Supp. 3d 469, 477 (N.D.N.Y. 2024) (citation modified); *see also Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277, 281 n.2 (S.D.N.Y. 2017) ("Merely invoking the existence of some federal statute, without presenting facts or alleging a claim related to that statute, does not establish federal question jurisdiction.") (citation modified). Thus, "a complaint is insufficient if it neither cites a specific provision of the statute, nor refers to particular facts that allegedly violated the statute." *Cmty. Bank, N.A.*, 761 F. Supp. 3d at 477 (citation modified). Because the SAC fails to specifically identify how any of the federal laws described in its introductory section support the specific claims for relief, I conclude that I have original jurisdiction only over Count One of the SAC.[17]

**D. Supplemental Jurisdiction**

I have resolved to dismiss Count One with leave to amend. Because Count One is the only count of the SAC that brings claims over which I may exercise original jurisdiction, I will decline to exercise supplemental jurisdiction over the remaining state-law claims in the SAC. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction"); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction

---

[17] In particular, although the parties have included arguments in their briefs that dispute whether the SAC states a claim under Title VII, I decline to consider those arguments at this juncture because the SAC does not include a count specifically alleging violations of Title VII.

over remaining state law claims.”). The remaining counts of the SAC are therefore dismissed without prejudice.

**E. Leave to Amend**

Nevas-Hackmeister renewed her motion to amend the complaint on February 9, 2026. ECF No. 102. In the motion, Nevas-Hackmeister seeks leave to add additional details regarding what she describes as a traumatic home invasion by Victoria Haskins, Nancy Haskins, and Stephen Haskins from June 9-10, 2022. *See* Proposed TAC ¶¶ 84-87. The proposed TAC contains 18 counts, many of which were not set forth in the SAC. In addition to numerous state-law claims, the proposed TAC invokes Title VII; 42 U.S.C. §§ 1983 and 1985; the Third, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution. Defendants timely responded in opposition to these proposed amendments. Although I conclude that the present motion to amend should be denied, I will permit Nevas-Hackmeister to amend the complaint once again to attempt to remedy the deficiencies identified below.

The Second Circuit has clarified that there are three different standards that govern attempts to amend pleadings, which correspond to different time periods in the litigation.

> At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends—either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave “freely . . . when justice so requires” pursuant to Rule 15(a)(2). This is a “liberal” and “permissive” standard, and the only “grounds on which denial of leave to amend has long been held proper” are upon a showing of “undue delay, bad faith, dilatory motive, [or] futility.” The period of “liberal” amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the “good cause” that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).

I previously informed Nevas-Hackmeister that any motion to amend would be governed by Rule 16 because it comes after the deadline set by the scheduling order governing this action. ECF No. 92; *see also* ECF No. 38 (stating that any motion to amend the pleadings or join parties filed after February 26, 2026 would be governed by the good cause standard of Rule 16(b)). On a motion to amend subject to Fed. R. Civ. P. 16(b)(4), the burden rests on the moving party to state good cause for amending after the deadline set in the scheduling order. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). "The primary consideration in determining good cause is whether the moving party can demonstrate diligence." *J.M. v. Sessions*, 162 F.4th 364, 377 (2d Cir. 2025) (citation modified).

Nevas-Hackmeister contends that she should be able to amend the complaint to plead additional facts because she previously experienced "a form of amnesia from which she has recovered and is now able to recall and articulate what was done to her and her family from October 22, 2021, and April 6, 2023." Pl.'s Mem. re Mot. to Amend 3. But Nevas-Hackmeister does not explain why she should be permitted to amend the complaint to present new *legal theories* more than nine months after Defendants filed a motion to dismiss, one year after she filed the SAC, nearly 18 months after she filed a complaint in Superior Court, and more than three years after CHRO proceedings began in October 2022. Because Nevas-Hackmeister's filing and the circumstances surrounding the case do not demonstrate diligence such that I can infer good cause to assert new legal theories, I decline to grant leave to amend.[18]

[18] Nevas-Hackmeister suggests that leave to amend should not be denied for lack of diligence absent a showing of undue prejudice to the non-moving party or bad faith conduct by the moving party. Pl.'s Mem. re Mot. to Amend 3 (citing *Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-CV-00763 (SVN), 2022 WL 443253, at *3 (D. Conn. Feb. 14, 2022); *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017)); *but see United States ex rel. Chiles v. Cooke Inc.*, 185 F.4th 12, 29-

Nonetheless, I recognize that this is the first opportunity for Nevas-Hackmeister to amend the complaint to remedy the defects identified in Defendants' motions to dismiss and discussed in detail in this ruling. "It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also Golla v. Neovasc, Inc.*, No. 22-361-CV, 2023 WL 2469770, at *3 (2d Cir. Mar. 13, 2023) (summary order) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.") (citation modified). Thus, consistent with the foregoing, I will permit Nevas-Hackmeister one final opportunity to amend the complaint to plead additional facts she says she is now able to recollect concerning the events from 2021 to 2023. The amended complaint should conform to the following specifications.

The Third Amended Complaint may assert claims under Title VII, the First Amendment, CFEPA, and Connecticut common law without further leave of court. Defendants have been on notice at least since the complaint was filed in Superior Court that Nevas-Hackmeister intended to pursue claims of employment discrimination and under Connecticut common law. I have not had occasion to review the sufficiency of any claims under Title VII (because, although this claim was pleaded in the original complaint, it was not clearly pleaded

---

30 (2d Cir. 2026) (concluding that district court did not abuse its discretion in denying leave to amend because of undue delay without making a showing of prejudice or bad faith). Those cases are distinguishable because they analyzed whether to authorize amendments under Rule 15(a)(2) rather than Rule 16. Moreover, I do conclude Defendants—not least the *pro se* defendants Nancy Haskins and Stephen Haskins—would be unfairly prejudiced by granting leave to amend under these circumstances.

in the SAC), and I declined to exercise supplemental jurisdiction over the CFEPA claims pleaded in the SAC.[19]

To the extent Nevas-Hackmeister intends to assert a claim of employment discrimination under Title VII or the CFEPA, the amended complaint should plead facts supporting the inference that she was employed by CTMD. After CTMD Defendants argued that the SAC failed to support the inference that Nevas-Hackmeister was employed by CTMD, Nevas-Hackmeister attached exhibits to her brief in opposition. ECF No. 68-1. It is Nevas-Hackmeister's burden to plead facts in the complaint that support the existence of an employment relationship. *See United States v. City of New York*, 359 F.3d 83, 91-92 (2d Cir. 2004) (describing plaintiff's burden to "show she was hired by the putative employer"); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 396 (S.D.N.Y. 2019) (reviewing allegations of the amended complaint in determining whether plaintiff adequately pleaded he was employed by defendant). I will not consider facts stated in prior pleadings or in an exhibit attached to a brief in opposition to a motion to dismiss. *Wade Park Land Holdings, LLC v. Kalikow*, No. 21-CV-1657 (LJL), 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023) ("A plaintiff who has eschewed attaching a document upon which it relies as an exhibit to the complaint, and who has not explicitly incorporated the document by reference and included

[19] CTMD Defendants' principal objection to the motion to amend is that the new claims pleaded in the proposed TAC are time-barred insofar as they do not relate back to the original pleading. Defs.' Mem. re Mot. to Amend 13-20. Because I deny leave to amend on other grounds, I need not resolve at this juncture whether the amendments relate back to the SAC. To the extent Defendants contend that any cause of action does not relate back to the SAC, they may raise that argument by moving to dismiss (in whole or in part) the third amended complaint. If they raise this argument, Defendants should be certain to analyze whether any claim asserted in the amended complaint fails to arise from "conduct, transaction, or occurrence" pleaded in the SAC. Fed. R. Civ. P. 15(a)(2); *see generally Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162-63 (2d Cir. 2025).

the relevant allegations about the document in the complaint, is not ordinarily permitted—when it suddenly becomes expedient—to rely upon the document by attaching it to a declaration submitted in response to a motion to dismiss."), *aff'd*, No. 23-591-BK, 2024 WL 3024648 (2d Cir. June 17, 2024). Accordingly, if Nevas-Hackmeister asserts a Title VII or CFEPA claim (and assuming Defendants seek dismissal on this ground), I will consider only those facts pleaded in the amended complaint in determining whether Nevas-Hackmeister has established she was employed by CTMD.

If Nevas-Hackmeister wishes to pursue claims other than under Title VII, the CFEPA, the First Amendment, or Connecticut common law, she must move for leave to amend the complaint. The motion to amend will be governed by the good cause standard of Rule 16(b). In analyzing whether to bring a claim, I remind counsel of Rule 11(b)(2)'s requirement that every pleading signed by an attorney carries a representation that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[20] I will impose sanctions if I determine that a court filing contains frivolous arguments.

Finally, each count of the amended complaint must be organized consistent with Rule 8 to give fair notice to Defendants of "whether there is a legal basis for recovery." *Harnage*, 916 F.3d at 141 (citation modified). Count One of the proposed TAC asserts that Defendants are liable for "Conspiracy to Violate Plaintiff's First Amendment Rights by Prior Restraint and Attempt to Chill Her Right to Communicate by Surveillance and Unlawful Interception of Her

[20] I note that the proposed SAC includes several unusual claims, including an allegation that Defendants forced Nevas-Hackmeister to quarter soldiers in her home in violation of the Third Amendment of the United States Constitution. Proposed TAC 46-48.

Personal Electronic Communications." Proposed TAC 38. Count One also combines numerous legal claims within the same count, invoking 42 U.S.C. § 1985, the First Amendment, the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, Connecticut common law, and Conn. Gen. Stat. § 52-570d. I recognize that Rule 8 authorizes a plaintiff to include alternative (and indeed contradictory) factual allegations within the same count. *See Cunningham v. Cornell Univ.*, 86 F.4th 961, 979 (2d Cir. 2023), *rev'd on other grounds*, 604 U.S. 693 (2025). But the manner in which the Proposed TAC is structured makes it highly difficult for Defendants—not least the *pro se* Private Defendants—to determine whether each count states a viable claim. *See* Fed. R. Civ. P. 8(a)(2) (stating that a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief").

To remedy these defects, each count of any amended complaint should specify (1) the substantive legal provision that Nevas-Hackmeister says Defendants violated (*e.g.*, CFEPA's anti-retaliation provision), (2) which defendants are alleged to be liable for that count, and (3) whether a defendant is sued in their individual or official capacity. Nevas-Hackmeister shall not assert more than one substantive legal claim per count. To the extent Nevas-Hackmeister believes the same conduct violates numerous laws, she shall set out each legal theory in separate counts. In addition, although Nevas-Hackmeister may incorporate facts by reference in her counts, the TAC must provide fair notice to Defendants as to the facts that form the basis of her particular claims.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED. The Second Amended Complaint, ECF No. 30, is dismissed.

On or before October 30, 2026, Plaintiff may file a Third Amended Complaint asserting claims under Title VII, the CFEPA, the First Amendment, and/or Connecticut common law in a form consistent with the instructions identified in this Opinion. If the Third Amended Complaint asserts only state-law claims, the court will conclude it lacks subject-matter jurisdiction and remand the action to Connecticut Superior Court. *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says. If (as here) the plaintiff eliminates the federal-law claims that enabled removal, leaving only state-law claims behind, the court's power to decide the dispute dissolves.").

If Plaintiff seeks to pursue claims other than under Title VII, the CFEPA, the First Amendment, or Connecticut common law, Plaintiff shall file a motion to amend the complaint consistent with Local Rule 7(f). Any such motion will be governed by Federal Rule of Civil Procedure 16(b)'s good cause standard.

**SO ORDERED.**

New Haven, Connecticut
September 30, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge